IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MEREDITH McCULLAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-2262 |
| | ) | |
| MICHAEL S. STARNES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

ORDER GRANTING MOTION TO DISMISS CERTAIN CLAIMS

Plaintiff Meredith McCullar ("McCullar") brings suit against Defendant Michael S. Starnes ("Starnes") for fraud, breach of contract, breach of contract implied in fact, and breach of fiduciary duty. (Am. Compl., ECF No. 9.) Starnes has filed a Motion to Dismiss. (Def. Michael S. Starnes' Mot. to Dismiss Am. Compl., ECF No. 13.) For the following reasons, Starnes' Motion is GRANTED.

I.   Background

In 2003, Starnes asked McCullar, a real estate developer and friend, to join him in various real estate investments. (Am. Compl. ¶ 6.) Together, they formed a variety of entities to invest in real estate, including Church Road Associates, LLC, Desoto Realty Investment Company, LLC, Grove Partners, LLC, MSMM

1

Realty Investment Company, MSMM Realty Investment Company, LLC, MSMM-II Realty Investment Company and Town Square Building B, LLC, MSMM-Realty Investment Company, and others (collectively, the "entities"). (Id.) Through the entities, McCullar and Starnes acquired a large number of holdings in and around Memphis, Tennessee, and in northern Mississippi. (Id.) McCullar contends that as partners in the entities, he and Starnes owed each other a fiduciary duty. (Id. ¶ 7.) McCullar asserts that the parties' business prospered because Starnes provided funding and credit, while McCullar provided his experience in the real estate market. (Id. ¶ 9.) The parties obtained loans relying on the entities' real estate holdings and Starnes' personal wealth. (Id. ¶ 9.)

As long as the real estate market remained strong, the parties had easy access to credit and were able to obtain loans. (Id. ¶ 10.) McCullar contends that it was understood that only Starnes had the resources to service the loans if the real estate market went into a downturn that made the value of the real estate collateral insufficient to cover the loans. (Id.) McCullar alleges that there was an implied contract between the parties whereby Starnes was liable for any loans that came due in return for McCullar's real estate expertise. (Id.)

Starnes suffered a stroke in January, 2006. (Id. ¶ 11.) Since then, McCullar's contact with Starnes has been limited,

and all of Starnes' actions in financial matters have been conducted by surrogates and representatives acting on his behalf. (Id.) McCullar asserts that Starnes is unable to communicate or to respond rationally to questions, despite the representations of Starnes' representatives to the contrary. (Id.) When the parties last met, on November 17, 2009, at Starnes' home, he was unable to respond to questions McCullar posed. (Id. ¶ 12.)

When the housing market declined in 2008, several loans on which McCullar was jointly and severally liable became due. (Id. ¶ 14.) McCullar was incapable of satisfying his portion of the loan obligations. (Id.) As a result of McCullar's acknowledged incapacity, Starnes (or individuals acting on behalf of Starnes) and McCullar signed a written agreement (the "Agreement") on or about August 15, 2008. (Id. ¶ 15; Agreement, ECF No. 9-1.) [1] McCullar contends that Starnes played no direct

---

[1] Ordinarily, when ruling on a motion to dismiss, the Court relies on the plaintiff's complaint. However, the Sixth Circuit has held that complaints alleging breach of contract incorporate the contract documents into the complaint. See Greenberg v. Life Ins. Co., 177 F.3d 507, 514 (6th Cir. 1999) (incorporating a insurance policy submitted by the defendant into the pleadings); Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (incorporating pension plan documents that defendant attached to motion into the pleadings because they were central to plaintiff's claim for benefits). District Courts have followed Greenberg and considered employment contracts, home loan modification offers, and arbitration clauses to be central to a plaintiff's complaint for breach of contract. See Orton v. Johnny's Lunch Franchise, LLC, No. 10-11013, 2010 U.S. Dist. LEXIS 72672, at *11 n.7 (E.D. Mich. July 20, 2010) (reversed on other grounds in Orton v. Johnny's Lunch Franchise, LLC, No. 10-2044, 2012 U.S. App. LEXIS 3344 (6th Cir. Feb. 21, 2012)); Bazzy v. IndyMac Mortg. Servs., 2010 U.S. Dist. LEXIS 15703, at *7 (E.D. Mich. Feb. 23, 2010); High v. Capital Senior Living Props. 2-

(continued . . .)

role in negotiating the Agreement. (Am. Compl. ¶ 16.) Two parties, Robert Orians and Raymond Blankenship ("Blankenship"), signed the Agreement as Starnes' Attorneys in Fact. (Agreement 8-9.)

The Agreement acknowledges that there is approximately $26.5 million in debt among the entities and that they are not capable of making the required payments. (Id. 1.) In its preamble, the Agreement states that "McCullar has indicated that he is not capable, at this time, of funding his proportionate share" of the debt and that "Starnes has agreed to finance the costs of funding [their] financial obligations . . . for the time being." (Id.) The terms "at this time" and "for the time being" are not defined. The Agreement provides that, if a party "incurs any expense in connection with the enforcement of . . . the Agreement, the breaching party shall reimburse the non-breaching party for any and all expenses" incurred in enforcing the contract. (Id. ¶ 8(e).)

The Agreement provides that each entity is to be managed by two Co-Managers, one appointed by McCullar and one by Starnes. (Id. ¶ 1(a)(i).) It requires the Co-Managers, at the beginning of each quarter, to provide McCullar and Starnes with a

---

(. . . continued)
Heatherwood, Inc., 594 F. Supp.2d 789, 796-97 (E.D. Mich. 2008); Campbell v. Prometheus Labs, Inc., No. 3:07-0058, 2008 U.S. Dist. LEXIS 6359, at *2 (M.D. Tenn. Jan. 28, 2008). For purposes of deciding the Motion to Dismiss, the Court will consider the Agreement.

quarterly budget reflecting the entities' revenue and debt, including all debt service payments. (Id. ¶ 1(a)(iv).) The Agreement recognizes that the entities' debt obligations include a $2 million line of credit provided by BankPlus. (Id.) It provides that all amounts previously loaned by Starnes to the entities are advances on a line of credit between Starnes and the entities, and that any advances McCullar has received from the entities in excess of his pro rata interest as one of the entities' owners is a loan to McCullar from the entities. (Id. ¶¶ 3-4.)

The Agreement requires McCullar to take several actions to assure the entities' financial stability. It provides that "McCullar has received advances from Entities in excess of his pro rata interest," and that the advances "have been treated as loans to McCullar from the entities." (Id. ¶ 4.) The Agreement requires McCullar to execute a promissory note to repay the entities for these advances, payable on the later of August 31, 2010, or the date on which the entities no longer hold any real estate assets. (Id. ¶ 4.)

Under the Agreement, McCullar is obligated to guarantee "one-half (50%) of all amounts due under the [Line of Credit Note], the Prior Loans [Line of Credit Note], and the River Tide Note." (Id. ¶ 5.) These three notes were signed on August 31, 2008. (Line of Credit Note, Prior Loans Line of Credit Note,

and River Tide Note, No. 9-1.) The Line of Credit Note evidenced a $2 million loan by Starnes to the entities to "meet any scheduled debt service payments on any loans to the Entities or the operating costs of the Entities." (Line of Credit Note; Agreement ¶ 2.) The Prior Loans Line of Credit Note obligated the entities to pay Starnes for cash advances they had received from him. (Prior Loans Line of Credit Note; Agreement ¶ 3.) The River Tide Note evidenced a promise by River Tide Partners, LLC to pay Starnes $510,750. (River Tide Note.) McCullar expressly agreed to guarantee repayment of one half of Starnes' line of credit to the entities, one half of Starnes' previous loans to the entities, and one half of Starnes' loan to River Tide. (Agreement ¶ 4.)

The Agreement does not include a termination date. It provides that it "constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous oral agreements." (Id. ¶ 8(b).)

When the loan from BankPlus became due, Blankenship arranged with Independent Bank for loans to McCullar and Starnes in the amount of $3,000,500, evidenced by two promissory notes, dated November 26, 2008, one for $2,000,000 and one for $1,000,500. (Am. Compl. ¶ 22.)

McCullar alleges that "[t]he promissory notes were a direct substitution for the BankPlus lines of credit," and that they were "collateralized by Starnes with approximately $6 million in personal assets." (Id. ¶ 22.) The promissory notes provide that McCullar and Starnes are jointly and severally liable, and each note has a maturity date of November 25, 2009. (Id. ¶ 23.) McCullar admits that he signed the promissory notes, but contends that it was understood by both McCullar and Starnes that the maturity date would be extended if needed, given that the collateral available was twice the value of the notes. (Id. ¶¶ 22-23.)

McCullar alleges that the promissory note for $2,000,000 to Independent Bank is referred to in the Agreement as the "two million dollar line of credit provided by Bank Plus." (Am. Compl. ¶ 24; Agreement ¶ 1(a)(iv).) The Agreement provides that the entities' debt obligations include "all loans by financial institutions made directly to an Entity, all loans by Starnes to an Entity or to the Entities as set forth herein and that Two Million Dollar Line of Credit provided by BankPlus." (Id. ¶ 1(a)(iv).) McCullar concedes that "[t]he Agreement does not state specifically how the $2,000,000 Debt Obligation . . . was to be serviced," but alleges that servicing was to be determined by the "Co-Managers of the Entities, of which [he] was one." (Id. ¶ 24.) Paragraph 1(a)(iv) provides that BankPlus' two

million dollar line of credit is one of the entities' debt obligations. (Agreement ¶ 1(a)(iv).) McCullar alleges that the $1,000,500 promissory note was used to finance MM Cutting Horses, LTD. (Id. ¶ 25.)

McCullar alleges that it was understood between McCullar and Starnes that, contrary to the language of the promissory notes, McCullar would be not be expected to pay the promissory notes on November 25, 2009, or in the foreseeable future. (Am. Compl. ¶ 27.) The parties assumed that Independent Bank would extend the maturity date of the promissory notes as a matter of course and that Starnes would personally assume the entire obligation if it did not. (Id.)

Starnes created a new entity, Starnes Family Office, LLC ("SFO"), on April 6, 2009. (Id. ¶ 28.) McCullar alleges that Starnes is an officer of SFO, which is managed by SFO Management, Inc., where Starnes is the CEO and on the Board of Directors. (Id.) McCullar contends that Starnes plays a major role in the management and direction of SFO. (Id.) On August 21, 2009, SFO purchased the promissory notes from Independent Bank. (Id. ¶ 29.) McCullar contends that SFO then sought repayment from McCullar for one half of the notes' value in violation of the Agreement. (Id.)

SFO sued McCullar for repayment of the promissory notes on March 18, 2010. (Id. ¶ 30); Starnes Family Office, LLC v.

Meredith McCullar v. Michael S. Starnes, No. 10-2186, 2011 U.S. Dist. LEXIS 109581, at *20-28 (W.D. Tenn. Sept. 1, 2011). McCullar contends that the use of SFO as a proxy constitutes a breach of the Agreement, the parties' implied contract, and Starnes' fiduciary duty to McCullar. (Am. Compl. ¶ 30.)

McCullar brings suit for fraud, breach of contract, breach of contract implied in fact, and breach of fiduciary duty. (Am. Compl. ¶¶ 34-41.) He seeks indemnification "for any and all sums that may be adjudged against McCullar." (Id. ¶¶ 42-43.)

## II.  Jurisdiction and Choice of Law

McCullar is a citizen of Texas. Starnes is a citizen of Tennessee. The amount in controversy exceeds $75,000. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

The substantive law governing a diversity case is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal court must apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); accord Menuskin v. Williams, 145 F.3d 755, 761 (6th Cir. 1998) (citations omitted); Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 850-51 (N.D. Ohio 2010) (citations omitted).

For contract claims, Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was

executed, absent a contrary intent. Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)); see also Southeast Tex. Inns, Inc. v. Prime Hospitality Corp., 420 F.3d 666, 672 n.8 (6th Cir. 2006) (observing that "Tennessee adheres to the rule of lex loci contractus."). "If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met": (1) the choice of law provision must be executed in good faith, (2) the chosen jurisdiction must bear a material connection to the transaction, (3) the basis for the choice of law must be reasonable, and (4) the choice of "another jurisdiction's law must not be 'contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.'" Id. (citations omitted).

The contract was entered into in the state of Tennessee and includes a choice of law provision that it "shall be construed in accordance with and governed by the laws of the State of Tennessee." (Agreement 5.) Choice of law provisions are honored so long as they were executed in good faith. Messer Griesheim Indus. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 475 (Ten. Ct. App. 2003). One of the parties is a Tennessee citizen, and much of their interaction took place in Tennessee.

Tennessee substantive law applies to McCullar's contract claims. See Vantage Tech., 17 S.W.3d at 650. If there was an implied contract, it was executed in Tennessee, where the parties conducted most of their business, where Starnes resides, and where the parties engaged in financial transactions. (Am. Compl.) Tennessee law applies to the claim for breach of implied contract.

McCullar contends that Starnes committed fraud by seeking to avoid the contract through the use of his proxy. For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). To determine which state has the "most significant relationship," Tennessee courts consider seven factors:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

11

> (f) certainty, predictability, and uniformity of result, and

> (g) ease in the determination and application of the law to be applied.

Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *10 (Tenn. Ct. App. Oct. 8, 2009) (quoting Restatement (Second) of Conflict of Laws § 6 (1971)).

When applying those factors, courts must consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." Id. at *10-11 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)); accord Hataway, 830 S.W.2d at 59. "[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Timoshchuk, 2009 WL 3230961, at *11; accord Hataway, 830 S.W.2d at 59.

The parties appear to agree that Tennessee law applies to McCullar's claim for fraud. (Mem. to Dismiss 6.) The alleged harm occurred in Tennessee, where Starnes resides. The properties at issue were located in either Tennessee or Mississippi. The Agreement provides that it is to be construed in accordance with Tennessee law. The parties' business

relationship was centered in Tennessee. Therefore, the Court will apply Tennessee law to McCullar's claim for fraud.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court "must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." League of United Latin American Citizens v. Bredesen, 2007 WL 2416474, at *2 (6th Cir. 2007) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)).

This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). Plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." Bredesen, 2007 WL 2416474, at *2 (citing Twombly, 127 S.Ct. at 1965).

To state a valid claim, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." Id. (citing Twombly, 127 S. Ct. at 1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1397, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"When the terms of a written interest are unambiguous, the interpretation of a contract is a matter of law for the Court, and it is the Court's duty to enforce the contract according to its plain terms." Paterson v. Anderson, No. 3:10-cv-0464, 2012 U.S. Dist. LEXIS 4835, at *20 (M.D. Ten. Jan. 17, 2012) (citing Whitehaven Community Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998)). "If the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract." Ray Bell Constr. Co. v. State, No. E2009-01803-SC-R11-CV, 2011 Tenn. LEXIS 1143, at *6 (Tenn. Dec. 12, 2011).

**IV. Analysis**

Starnes argues that McCullar's claims for indemnification, for fraud, and for breach of express or implied contract should be dismissed because: 1) his indemnity claim is duplicative of his indemnity claim in Starnes Family Office; 2) he has failed to plead fraud with particularity; and 3) Starnes had no

14

contractual obligation, expressed or implied, under the Agreement to protect McCullar from the debts he assumed or guaranteed. (Def. Michael S. Starnes' Mem. in Supp. of Mot. to Dismiss, ECF No. 6-1 ("Mem. to Dismiss").)[2]

## A. Whether the Indemnity Claim is Duplicative

McCullar seeks "indemnification from Starnes for any and all sums that may be adjudged against [him], as well as any attorneys' fees and expenses incurred, in the SFO lawsuit" independently of any damages he receives based on Starnes' breach of the Agreement. (Am. Compl. ¶ 43.) McCullar relies on Paragraph 1(a)(i) of the Agreement, which provides that the Co-Managers "shall be indemnified and exculpated to the maximum extent provided by statute." In Starnes Family Office, McCullar "demand[ed] indemnification from Starnes for any and all sums that may be adjudged against McCullar" in favor of SFO based on the parties' contract. (Starnes Family Office, Am. Compl. ¶ 17, ECF No. 19, 10-2186.) The Court denied McCullar's indemnification claim against Starnes on September 1, 2011. Starnes Family Office, 2011 U.S. Dist. LEXIS 109581, at *20-28. The Court concluded that "McCullar's claim for indemnification

---

[2] Starnes has filed a second motion to dismiss in response to McCullar's amended complaint. (Def. Michael S. Starnes' Mot. to Dismiss Am. Compl., ECF No. 13.) In it he states he relies on his original Motion to Dismiss and the arguments in his reply to McCullar's Response to his original Motion to Dismiss. (Id. 1.) Starnes adopts no new arguments in his second Motion to Dismiss. The Court relies on the arguments Starnes advanced in his first Motion to Dismiss and in his Reply.

is not plausible because he has not alleged facts showing that Starnes agreed to assume McCullar's obligation." Id. at *27.

McCullar contends that his indemnification claim in this matter is different, because it "now includes reference to the express indemnification provision found in the Agreement at Paragraph 1(a)(i)." (Resp. 3.) The same Agreement was at issue in Starnes Family Office, and the Court cited that paragraph in concluding that "the plain language of the indemnification provision applies only to Co-Managers' liability for management of the entities." Starnes Family Office, 2011 U.S. Dist. LEXIS 109581, at *24. McCullar relies on language the Court has already considered. He seeks indemnification under the same provision he did in Starnes Family Office. "It is within a district court's power to dismiss a suit that is duplicative of another federal court suit." Lawson v. United States, No. 08-cv-11, 2008 U.S. Dist. LEXIS 7287, at *4 (E.D. Tenn. Jan. 31, 2008) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). "'[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" Hahn v. Tarnow, No. 06-12814, 2006 U.S. Dist. LEXIS 52383, at *23 (E.D. Mich. July 31, 2006) (quoting Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000)). "A suit is duplicative, and thus subject to dismissal, if the claims, parties, and available

16

relief do not significantly differ between the two actions."
Harrington v. Stegall, No. 02-0573, 2002 U.S. Dist. LEXIS 3967,
at *3 (E.D. Mich. Feb. 28, 2002).  McCullar's indemnification
claim, based on the same language in the same contract against
the same defendant as the claim in Starnes Family Office, is
duplicative.  It is DISMISSED.

### B. Whether the Claim of Fraud Must Be Dismissed for Lack of Particularity

Starnes argues that McCullar has not alleged fraud with
sufficient particularity because "[n]owhere in the Complaint
does McCullar quote Starnes, allege that Starnes said specific
words, or refer to any communication occurring at any specific
time or location."  (Mem. to Dismiss 4.)  Starnes contends that
McCullar merely alleges that it was "always understood" that
McCullar would never be called on to pay any of the promissory
notes he executed or guaranteed.  (Id. 5.)

Federal Rule of Civil Procedure 9(b) requires that fraud be
pled with "particularity," although "malice, intent, knowledge,
and other conditions of a person's mind may be alleged
generally."  A plaintiff's complaint need only contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'Rule 9(b)'s
particularity requirement does not [eliminate] the general
principles set out in Rule 8; rather, the two rules must be read

in harmony.'" <u>Sanderson v. HCA-The Healthcare Co.</u>, 447 F.3d 873, 876 (6th Cir. 2006) (quoting <u>Michaels Bld. Co. v. Ameritrust Co., N.A.</u>, 848 F.2d 674, 679 (6th Cir. 1988)). A plaintiff must "'allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" <u>Id.</u> (quoting <u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559, 563 (6th Cir. 2003)). Under Tennessee law, a plaintiff must prove five elements to sustain a claim of fraud in the inducement of a contract:

> (1) [the existence of] a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance.

<u>Blackburn & McCune, PLLC v. Pre-Paid Legal Servs., Inc.</u>, No. M2009-01584-COA-R3-CV, 2010 WL 2670816, at *11 (Tenn. Ct. App. June 30, 2010) (quoting <u>Lamb v. MegaFlight, Inc.</u>, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000)).

McCullar has identified no false statements. He argues that Starnes is guilty of fraud because he breached the "implied contract, and the terms of the written Agreement." (Am. Compl. ¶ 35.) Any implied contract created by the "course of dealing and business conduct with McCullar over three years" before the Agreement was signed was superseded by the parties' written

18

Agreement.  (Id. ¶ 39.)  The only fraudulent act McCullar identifies is SFO's suit against McCullar for payment of his obligations on the parties' promissory notes, which he signed after the Agreement.  (Id.)

McCullar also argues that SFO's purchase of the promissory notes was a fraudulent act designed to avoid the understanding between Starnes and McCullar.  (Id.)  The Court has already rejected that argument.  McCullar argued in Starnes Family Office, LLC v. McCullar that SFO was being used for an improper purpose and could not sue on the notes.  765 F. Supp. 2d 1036, 1049 (W.D. Tenn. 2011).  The Court reasoned that, "[o]utside the parent-subsidiary context, there is no authority [in Tennessee] for piercing the corporate veil in reverse."  Id.  "SFO's form cannot be ignored."  Id.  SFO is a separate legal entity and is entitled under Tennessee law to sue on debts it is owed.  McCullar has not pled grounds for fraud with particularity.  His claim must be DISMISSED.

### C. Whether the Claim for Breach of Express or Implied Contract Should Be Dismissed

Starnes contends that there was no breach of contract, express or implied.  McCullar argues that Starnes agreed to delay repayment indefinitely.  McCullar relies on the Agreement's preamble, which states that "Starnes has agreed to finance the costs of funding the financial obligations of the

Entities . . . for the time being," because "McCullar has indicated that he is not capable, at this time, of funding his proportionate share of any capital contribution." (Agreement 1.) McCullar argues that this language shows that the parties agreed that Starnes would "finance the costs of [their] obligations." (Am. Compl. ¶ 18.)

McCullar's reliance on the preamble is not well taken. It is a basic principle of contract law that "preambles in a contract generally serve to introduce the contract's subject matter rather than set forth the specific rights and obligations of the parties." Cain Restaurant Co. v. Carrols Corp., 273 F. App'x 430, 434 (6th Cir. 2008); see also Ohio Farmers Ins. Co. v. Special Coatings, L.L.C., No. 3:07-1224, 2008 U.S. Dist. LEXIS 103685, at *55 (M.D. Tenn. Dec. 28, 2008) (applying Tennessee law and Cain Restaurants and holding that, "[c]onstruing the [] agreement as a whole, the Court concludes as a matter of law that the preamble . . . did not state any particular condition of the contract."); Grynberg v. FERC, 71 F.3d 413, 416 (D.C. Cir. 1995) (recognizing, as a general principle of contract law "that a Whereas clause, while sometimes useful as an aid to interpretation, cannot create any right beyond that arising from the operative terms of the document.") (internal quotation marks omitted); accord S.M. Williamson & Co. v. Ragsdale, 95 S.W.2d 922, 924-25 (Tenn. 1936)

(concluding that a preamble in a contract is "merely descriptive of [a] transaction"); <u>Murray on Contracts</u>, § 88: Rules of Interpretation (2002) ("where the preamble and remainder are both clear but inconsistent with each other, the remainder of the writing will control.").

McCullar points to no provision in the Agreement that was breached. The Agreement does not provide that he will not be liable for any subsequent debt the parties might undertake. The two promissory notes, totaling $3,000,500, were executed on November 26, 2008, several months after the Agreement was signed. (Am. Compl. ¶ 23.) McCullar concedes that the promissory notes, as written, make him jointly and severally liable. (<u>Id.</u> ¶ 14.) They are separate, unambiguous contracts, which must be interpreted based on the language in them. <u>Kiser v. Wolfe</u>, 353 S.W.3d 741, 748 (Tenn. 2011).

To the extent the parties' course of dealing can be used to interpret the Agreement, their course does not show that McCullar would never have agreed to assume debt to ensure the entities' viability. <u>Efird v. Clinic of Plastic 7 Reconstructive Surgery, P.A.</u>, 147 S.W.3d 208, 223 (Tenn. Ct. App. 2003). The Agreement provides that the entities will be responsible for the $2 million BankPlus line of credit. (Agreement ¶ 1(a)(iv).) It also provides that McCullar will guarantee various loans by Starnes to the entities. (<u>Id.</u> ¶ 4.)

When the BankPlus line of credit expired, McCullar and Starnes voluntarily agreed to pay it with the proceeds of loans evidenced by the November 26, 2008 promissory notes, on which they were jointly and severally liable. (Am. Compl. ¶¶ 14, 23.) This was nothing new. The Agreement already required McCullar to guarantee several loans Starnes made to the entities. (Agreement ¶ 4.) The November 26, 2008 promissory notes do not represent an unusual practice for the parties. There was no breach of contract when SFO sought to require McCullar to pay his contractually agreed liability. McCullar has not shown "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). McCullar's claim for breach of express contract is DISMISSED.

Starnes also contends that McCullar's claim for breach of contract implied in fact should be dismissed because any implied agreement was superseded by the express agreement. (Mem. to Dismiss 9.) McCullar alleges that he and Starnes had an implied contract in which Starnes assumed McCullar's debt in return for McCullar's expertise. (Am. Compl. ¶¶ 38-39.) McCullar bases his argument on the parties' course of conduct for three years before the signing of the Agreement. (Am. Compl. ¶ 21.) Relying on the parties' "mutual understanding and long standing course of dealing and business conduct," he alleges that Starnes knew McCullar would not be liable. (Id. ¶ 39.)

McCullar's attempt to establish an implied in fact contract is unavailing because "'an implied contract or quasi-contract will not be imposed where an express contract or agreement exists.'" Scipio v. Sony Music Entertainment, Inc., 173 F. App'x 385, 397 n. 12 (6th Cir. 2006) (quoting Tenn. Juris., Contracts § 98)); accord Daily v. Gusto Records, Inc., 14 F. App'x 579, 587 (6th Cir. 2001) (relying on Tennessee law to find that "a contract cannot be implied at law when a valid contract exists on the same subject matter.").

Any implied contract was superseded by the Agreement and the November 26, 2008 promissory notes. The Agreement "constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous oral agreements, representations, and understandings of the parties." (Agreement 5.) It explicitly provides that "McCullar shall guarantee one-half (50%)" of Starnes' line of credit and previous advances to the entities and that McCullar will pay back all advances he received from the entities by "the later of August 31, 2010 or the date on which the Entities no longer hold any real estate assets." (Id. 3.) If the parties had a prior understanding that McCullar would not be liable, it was superseded by his express agreement to guarantee Starnes' loans to the entities and to repay the advances.

The promissory notes also supersede any implied contract. When McCullar signed the November 26, 2008 promissory notes, he affirmed that he was jointly and severally liable. (Am. Compl. ¶ 14.) The November 26, 2008 promissory notes were an express, written transaction. See Ann Taylor Realtors, Inc. v. Sporup, No. W2010-00188-COA-R3-CV, 2010 Tenn. App. LEXIS 755, at *14 (Tenn. Ct. App. Dec. 3, 2010) (holding that a promissory note is a "formal, written agreement."). "[W]hen parties have an express contract dealing with a transaction, there can be no recovery [in] implied contract." Frederic R. Harris, Inc. v. Metro Gov't of Nashville & Davison Cnty., No. M2000-02421-COA-R3-CV, 2001 Tenn. App. LEXIS 774, at *8 (Tenn. Ct. App. Oct. 22, 2001). Because he has not pled a valid implied contract, McCullar's claim for breach of implied contract is DISMISSED.[3]

## V. Conclusion

For the foregoing reasons, the Court GRANTS Starnes' Motion

---

[3] Starnes also contends that any implied contract would be barred by the Statute of Frauds. (Mem. to Dismiss 11-12.) Because the Court concludes that there was no implied contract, it need not address whether any implied contract would be barred by the Statute of Frauds. The Court has noted that "[u]nder Tennessee's statute of frauds, 'any special promise to answer for the debt . ..of another person' must be 'in writing, and signed by the party to be charged therewith.'" Starnes Family Office, 2011 U.S. Dist. LEXIS 109581, at *25 (citing Tenn. Code Ann. § 29-2-101(a)(2-5)). Although in Tennessee co-guarantors may apportion liability orally despite the statute of frauds, Squibb v. Smith, 948 S.W.2d 752, 756 (Tenn. Ct. App. 1997), "McCullar and Starnes are co-makers of the Notes who undertook a joint and severable direct obligation, not co-guarantors of an obligation who agreed to apportion their contingent liability in a particular way." Starnes Family Office, 2011 U.S. Dist. LEXIS 109581, at *27.

to Dismiss.  McCullar's claims for fraud, breach of contract, breach of contract implied in fact, and indemnification are DISMISSED.  His claim for breach of fiduciary duty remains.

So ordered this 30th day of March, 2012.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE